Egan Jr., J.
(concurring in part and dissenting in part). I agree with the majority that Supreme Court’s judgment must be reversed and that the underlying determination must be annulled. However, for the reasons that follow, I am of the view that the appropriate remedy is not to remit this matter for a de novo review of the Hearing Officer’s recommendation, but, rather, to grant the petition in its entirety. Accordingly, and to that extent, I respectfully dissent.
I think it would be helpful to keep this proceeding in its proper perspective. Stephen Hrustich, the Fire Chief, and petitioner, a fire inspector for the Village of Endicott Fire Department and the president of its firefighters union, engaged in a heated discussion concerning Hrustich’s directive that all firefighters undergo a respiratory physical examination. Words were said back and forth, during the course of which petitioner admittedly stated to Hrustich, “What the f ... is your problem.” According to Hrustich, he then warned petitioner that he was “way out of line” and that he should watch his tone, in response to which petitioner said, “I’m the f . . . ing union president and there’s nothing you can f . . . ing do about it.” Precisely what words were uttered in the context of this one sentence has now become the center of this entire proceeding.
As a result of the foregoing exchange, Hrustich — as was his right — charged petitioner with three specifications of misconduct, including insubordination, and ordered that petitioner immediately be suspended without pay for 30 days. Petitioner — as was his right — requested a hearing pursuant to Civil Service Law § 75, during the course of which Hrustich, petitioner and others testified as to their recollection of the encounter. In this regard, petitioner admitted that he told Hrustich, “I’m the union president and I’m acting in my capacity as the union president,” but denied that this sentence was punctuated by profanity. At the conclusion of the hearing, the Hearing Officer believed the employer’s version of the exchange, found petitioner guilty of misconduct and recommended that petitioner be suspended for 20 working days without pay (subject to a credit for the previously ordered unpaid suspension). Respondent John Bertoni, the Mayor of respondent Village of Endicott, sustained the finding of guilt but — as was his right — deemed the penalty imposed to be, among other things, insufficient and ordered petitioner to serve a total of 60 days of unpaid suspension. In the interim, the firefighters union filed an improper practice charge against respondents with the Public Employment Relations Board (hereinafter PERB), and Hrustich and petitioner *1271 again testified as to the disputed verbal exchange — each sticking to their guns regarding their recollection of the event.
Having read the transcript of the initial disciplinary proceeding, I defer to the Hearing Officer’s finding that petitioner indeed said, “I’m the f . . . ing union president and there’s nothing you can f . . . ing do about it,” and I agree that petitioner’s words would constitute misconduct under any circumstances — particularly when uttered to his superior officer. I also acknowledge that the Mayor’s decision to increase the suspension imposed is sustainable. What happened next, however, is wrong.
Based upon his testimony at the November 2009 disciplinary hearing and the March 2010 PERB hearing, petitioner was served with a second notice of misconduct charging him with, among other things, perjury and failure to be truthful. This set of charges apparently stemmed from Hrustich’s belief that, because the Hearing Officer did not credit petitioner’s testimony during the initial disciplinary hearing and because petitioner continued to deny — during the course of the subsequent PERB hearing — that he used profanity with respect to the contested sentence, petitioner necessarily gave false testimony. To my analysis, permitting a subsequent disciplinary proceeding to be commenced under these circumstances not only violates public policy but, more to the point, effectively places a public employee such as petitioner in the untenable position of having to choose between exercising his or her fundamental right to testify — at the risk of incurring additional disciplinary charges and suffering an eventual loss of employment — or foregoing his or her rights, remaining silent and hoping for a lesser penalty.
There is no question that a public employee subject to removal or other disciplinary action is afforded various fundamental rights under Civil Service Law § 75, including — insofar as is relevant here — the right to a hearing and the right “to summon witnesses in his [or her] behalf’ (Civil Service Law § 75 [2]), the latter of which surely encompasses the right to testify in one’s own defense. And while I certainly am not suggesting that petitioner’s right to present a defense (or to testify in support of the improper practice charge) includes the right to offer false testimony or otherwise suborn perjury, I also do not believe that petitioner should have been subject to further disciplinary action merely because (1) the Hearing Officer who presided over the first disciplinary proceeding credited the employer’s version of the sentence, and (2) despite such finding, petitioner continued to deny — during the course of the ensuing PERB hearing — that he twice used profanity with respect to the second sentence he uttered to Hrustich.
*1272 In this regard, it must be remembered that petitioner did not lose his job because — as the initial Hearing Officer found — he used profanity in the context of both of his statements to Hrustich; that demonstrated misconduct only resulted in the imposition of a 60-day unpaid suspension. Rather, petitioner lost his job solely because — in the context of exercising his right to present a defense and/or testifying in support of the improper practice charge — he denied (or continued to deny) that he used the “F” word in the second sentence spoken to Hrustich. Arguably, petitioner would have been better off if he simply had admitted the initial misconduct — notwithstanding the fact that he truly may have believed that he did not actually utter the offending words — and elected to forgo either his right to a hearing or his right to testify on his own behalf, as it was — in effect — his invocation of his rights under Civil Service Law § 75 that cost him his job. The bringing of the second set of charges under these circumstances is really a stretch, and the penalty obtained — dismissal—is totally out of proportion to the act. The irony of what occurred here aside, I believe that the procedure adopted by the employer — if allowed to stand — will have a chilling effect upon a public employee’s right to present a defense and testify on his or her own behalf and, for that reason, I agree that the underlying determination must be annulled.[3]
Moreover, even if I did not otherwise have misgivings regarding the procedure employed here, I nonetheless would be compelled to grant the petition because the record as a whole is not, to my analysis, sufficient to support the inference of knowledge and willfulness required to sustain the charges at issue. Accordingly, for all these reasons, I would reverse Supreme Court’s judgment, annul the challenged determination, grant the petition in its entirety and restore petitioner to his former position — complete with back pay and benefits.
Ordered that the judgment is reversed, on the law, without costs, determination annulled, and matter remitted to respondent Village of Endicott for further proceedings not inconsistent with this Court’s decision.

. I also am left to wonder what would have happened if the outcome of the original disciplinary proceeding had been different. In other words, if the Hearing Officer had credited petitioner’s version of the events and found petitioner to be not guilty of misconduct, would the Mayor have initiated disciplinary charges against Hrustich for giving false testimony at petitioner’s disciplinary hearing?